ZEV SHECHTMAN (State Bar No. 266280)
*zev.shechtman@saul.com*
CAROL CHOW (State Bar No. 169299)
*carol.chow@saul.com*
SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067-6006
Telephone: (310) 255-6100
Facsimile: (310) 255-6200

PAIGE TOPPER (admitted *pro hac vice*)
*paige.topper@saul.com*
SAUL EWING LLP
1201 N. Market St., Suite 2300
Wilmington, Delaware 19801
Telephone: (302) 421-6800
Facsimile: (302) 421-6813

SABRINA ESPINAL (admitted *pro hac vice*)
*sabrina.espinal@saul.com*
SAUL EWING LLP
1500 Market St., 38th Floor
Philadelphia, Pennsylvania 19102
Telephone: (215) 972-7777
Facsimile: (215) 972-7725

General Bankruptcy Counsel for Heycart Inc,
Debtor and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>HEYCART, INC,<br><br>Debtor and Debtor in Possession. | Case No. 8:24-bk-10483-TA<br><br>Chapter 11<br><br>**DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**<br><br>**Disclosure Statement Hearing Via <u>ZoomGov</u>**<br>Date: July 31, 2024<br>Time: 10:00 a.m.<br>Place: Courtroom 5B |

**TABLE OF CONTENTS**

**Page(s)**


I. INTRODUCTION ....... 5

II. DEFINED TERMS AND RULES OF INTERPRETATION ....... 6

- A. Defined Terms ....... 6
- B. Rules of Interpretation ....... 15

III. CLASSIFICATION AND TREATMENT OF CLAIMS UNDER THE PLAN ....... 16

- A. General Overview ....... 16
- B. Unimpaired Classes of Claims ....... 16
- C. Impaired Classes of Claims ....... 16
- D. Impaired Class of Equity Interests ....... 17

IV. TREATMENT OF UNCLASSIFIED CLAIMS ....... 17

- A. Administrative Claims. ....... 18
- B. Fee Claims. ....... 19
- C. Priority Tax Claims ....... 20

V. TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ....... 20

- A. Class 1: Amazon Secured Claim. ....... 20
- B. Class 2: SBA Secured Claim. ....... 21
- C. Class 3: SellersFunding Secured Claim. ....... 21
- D. Class 4: 8fig Secured Claim. ....... 21
- E. Class 5: Clearco Secured Claim. ....... 22
- F. Class 6: Other Priority Claims. ....... 22
- G. Class 7: General Unsecured Claims. ....... 23
- H. Class 8: Subordinated Claims. ....... 23
- I. Class 9: Equity Interests. ....... 23
- J. Reservation of Rights Regarding Claims and Interests. ....... 23

VI. MEANS OF IMPLEMENTING THE PLAN ....... 24

A. Funding for the Plan. .....24
B. Vesting of Assets in Reorganized Debtor. .....24
C. Restructuring Transactions. .....24
D. Cancellation of Existing Equity Interests; Issuance of New Equity Interest. .....25
E. Corporate Existence. .....25
F. Directors and Officers of the Reorganized Debtor. .....25
G. Cancellation of Instruments and Documents. .....25
H. Release of Liens. .....25
I. Exemption from Certain Transfer Taxes. .....26
J. Setoffs. .....26
K. Withdrawal of Plan. .....26
L. No Separate Disbursing Agent.. .....27
VII. DISTRIBUTIONS .....27
A. Distributions to be Made Pursuant to the Plan. .....27
B. Disputed General Unsecured Claims. .....27
C. Objections to and Estimation of Claims. .....27
D. Delivery of Distributions and Undeliverable or Unclaimed Distributions. .....28
1. Delivery of Distributions in General. .....28
2. Undeliverable and Unclaimed Distributions. .....29
3. Treatment of Unclaimed Distributions. .....29
E. Interest on Claims. .....29
F. Withholding and Reporting Requirements. .....29
G. Miscellaneous Distribution Provisions. .....30
1. Method of Cash Distributions. .....30
2. Distributions on Non-Business Days. .....31
H. *De Minimis* Distribution Provisions. .....31
I. Distribution Record Date. .....31
J. Residual Cash in General Unsecured Claim Distribution Fund. .....31

VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....31

A. Assumption of Executory Contracts and Unexpired Leases. ....31

IX. EFFECT OF PLAN ON CLAIMS AND INTERESTS....32

A. Binding Effect....32

B. Compromise and Settlement....32

C. Discharge. ....33

D. Injunction....34

E. Exculpation. ....34

F. Terms of Injunctions or Stays....35

X. CONFIRMATION AND CONSUMMATION OF THE PLAN....35

A. Conditions to Confirmation. ....35

B. Conditions to Effective Date. ....35

C. Consequences of Non-Occurrence of Effective Date. ....36

XI. ADMINISTRATIVE PROVISIONS....36

A. Retention of Jurisdiction....36

B. Amendments. ....39

C. Successors and Assigns. ....39

D. Governing Law. ....40

E. Corporate Action. ....40

F. Effectuating Documents and Further Transactions. ....40

G. Dissolution of the Committee....40

H. Confirmation Order and Plan Control. ....40

I. Miscellaneous Rules. ....41

J. Notice and Default....41

K. No Admissions or Waiver. ....42

# I.

# INTRODUCTION

Heycart Inc, the debtor and debtor in possession in this chapter 11 case (the "Debtor"), respectfully proposes its chapter 11 plan of reorganization (the "Plan"). The Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

This Plan is intended to provide the structure and method by which the Debtor will reorganize its business. This Plan, together with the Disclosure Statement,[1] provides the Debtor's creditors with adequate information to enable them to make an informed judgment concerning the method by which the Debtor plans to reorganize and emerge from bankruptcy. If the Bankruptcy Court confirms the Plan, then it will be binding on the Debtor, its creditors and other parties in interest.

The Plan proposes to restructure debts owed to five classes of creditors who hold Secured Claims against the Debtor's Estate. The Plan further proposes to pay Holders of Priority Tax Claims in full and General Unsecured Claims their pro rata share of $700,000. Holders of General Unsecured Claims are projected to receive approximately 3.6% of such Claims. The Plan will be funded by Cash on hand on the Effective Date and future operations.

Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtor's history, business, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan.

***All Holders of Claims against the Debtor are encouraged to read the Plan in its entirety, and to consult with an attorney, before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and the Plan, the Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan, or any part thereof, prior to its substantial consummation.***

---

[1] Defined Terms are listed in the next section.

## II.

## DEFINED TERMS AND RULES OF INTERPRETATION

**A. Defined Terms**

1. 503(b)(9) Claims means Claims that are entitled to administrative expense priority pursuant to sections 503(b)(9) and 507(a)(2) of the Bankruptcy Code.

2. 8fig means 8fig Inc.

3. 8fig 9019 Motion means the motion to approve the settlement agreed to by 8fig and Debtor pursuant to Bankruptcy Rule 9019.

4. Administrative Claim means an unsecured Claim, including a Fee Claim and U.S. Trustee Fees, for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(1) of the Bankruptcy Code, including the actual, necessary costs and expenses incurred after the Petition Date of preserve the Estate (such as wages, salaries, or commissions for services rendered), and 503(b)(9) Claims.

5. Administrative Claim Bar Date means the date that is 30 days after the Effective Date.

6. Allowed means, with respect to a Claim in a specified Class or an Allowed Administrative Claim, Priority Tax Claim, or Fee Claim, such Claim is: (i) scheduled by the Debtor in its Schedules in a liquidated amount and not scheduled as contingent or disputed and not superseded by a proof of claim or subject to setoff; (ii) asserted in the chapter 11 case by a proof of claim which has been timely filed, or late filed with leave of the Bankruptcy Court, and not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan, or applicable orders of the Bankruptcy Court; or (iii) that has been allowed by a Final Order or stipulation with the Debtor or the Reorganized Debtor, as the case may be, pursuant to this Plan. An Allowed Claim: (y) includes a previously Disputed Claim to the extent such Disputed Claim becomes allowed when the context so requires; and (z) shall be net of any valid setoff amount, which amount shall be deemed to have been set off in accordance with the provisions of this Plan.

7. Amazon means Amazon Capital Services, Inc. or Amazon Advertising LLC or affiliates.

8. Ballot means the form approved by the Bankruptcy Court and distributed to Holders of Claims entitled to vote on the Plan on which is to be indicated an acceptance or rejection of the Plan.

9. Bankruptcy Code means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to this chapter 11 case.

10. Bankruptcy Court means the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

11. Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms or the Local Rules of the Bankruptcy Court, and as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to this chapter 11 case.

12. Business Day means any day, other than a Saturday, Sunday or a legal holiday (as used in Bankruptcy Rule 9006(a)).

13. Cash means legal tender of the United States of America or its equivalents, including but not limited to bank deposits, checks, and other similar items.

14. Causes of Action mean any and all actions, suits, claims for relief, causes of action, Chapter 5 Causes of Action, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, whether arising before or after the Petition Date.

15. Chapter 5 Causes of Action means any and all actual or potential claims and causes of action arising or assertable pursuant to Chapter 5 of the Bankruptcy Code, including claims, rights and causes of action arising or assertable under sections 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code, including but not limited to, the recovery of preferences and fraudulent transfers from any entity that received cash or any other interest in property from or on behalf of the Debtor directly or indirectly.

16. Claim means a claim against the Debtor or its property, as such term is defined in section 101(5) of the Bankruptcy Code.

17. Claims Objection Deadline means 120 days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court; *provided, however*, that the Reorganized Debtor may seek extensions of this deadline from the Bankruptcy Court.

18. Class means a class of Claims or Interests described in Article III of the Plan.

19. Clearco means CFT Clear Finance Technology Corporation d/b/a Clearco.

20. Committee means the statutory committee of unsecured creditors, appointed by the U.S. Trustee in this chapter 11 case pursuant to section 1102 of the Bankruptcy Code.

21. Confirmation Date means the date the Bankruptcy Court enters the Confirmation Order on the docket in this chapter 11 case.

22. Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code.

23. Confirmation Order means the order of the Bankruptcy Court confirming this Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

24. Cure Amount means all pre- and postpetition amounts payable pursuant to section 365(b)(1) of the Bankruptcy Code in order to effectuate the Debtor's assumption of an Executory Contract pursuant to the Plan.

25. Debtor has the meaning set forth in section I of this Plan.

26. Disallowed means with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtor which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Debtor or Reorganized Debtor, as the case may be, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules in a zero or undetermined dollar amount or as disputed, contingent, partially liquidated or unliquidated and in respect of which a proof of Claim or a proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or

estimation results in a reduction in the Filed amount of any proof of Claim or proof of Interest; (vi) was not timely or properly Filed; (vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; and (viii) is held by a Holder from whom property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or who is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Holder has paid the amount, or turned over any such property, for which such Holder is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code. In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

27. <u>Disbursing Agent</u> means the Reorganized Debtor or its designee.

28. <u>Disclosure Statement</u> means the disclosure statement, as amended, supplemented or modified from time to time, filed contemporaneously herewith and distributed in accordance with, among others, sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3017, and other applicable law.

29. <u>Disclosure Statement Order</u> means the *Order (I) Approving Second Amended Disclosure Statement, (II) Establishing Voting, Plan Confirmation Scheduling and Related Procedures, and (III) Granting Related Relief*, entered on [●], 2024 [Docket No. ___].

30. <u>Disputed Claim</u> means any Claim or Interest which has not yet been Allowed or Disallowed in accordance with the terms of this Plan. For the purposes of this Plan, a Claim shall be considered a Disputed Claim in its entirety before the time that an objection has been or may be filed if: (i) the amount or classification of the Claim specified in a relevant proof of claim exceeds the amount or classification of any corresponding Claim scheduled in the Debtor's Schedules; (ii) any corresponding Claim scheduled by the Debtor has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Claim has been scheduled by the Debtor in its Schedules.

31. <u>Distribution</u> means the distribution of Cash or other property, as the case may be, in accordance with this Plan.

32. <u>Distribution Address</u> means the address where payments to the Holder should be sent as set forth in the Holder's proof of claim, as amended or supplemented. If no proof of claim is filed

with respect to a particular Claim, such defined term means the address for the Holder set forth in the Debtor's Schedules.

33. Distribution Date means the date on which a Distribution is made pursuant to this Plan.

34. Distribution Record Date means the record date for purposes of making Distributions under this Plan on account of Allowed Claims, which shall be the Confirmation Date.

35. Effective Date means the first date on which all the conditions of Article X.B of the Plan have been satisfied or have been waived in writing.

36. Entity has the meaning set forth in section 101(15) of the Bankruptcy Code.

37. Equity Sale Process means the marketing process for the New Equity Interests to determine whether a higher price could be achieved.

38. Estate means the estate of the Debtor created by section 541 of the Bankruptcy Code on the Petition Date.

39. Exculpated Parties means the (i) Debtor, (ii) each of the Debtor's current officers and directors, (iii) the Professionals, (iv) the Committee members, and (v) the Related Persons for each of the foregoing parties.

40. Executory Contract means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

41. Existing Equity Interest means any Interest in the Debtor that existed immediately before the Effective Date.

42. Fee Claim means a Claim for compensation or reimbursement of expenses of a Professional pursuant to section 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with the chapter 11 case. "Fee Claim" does not include any Claim for compensation or reimbursement of expenses related to services rendered after the Effective date by, as the case may be, the Professionals or Reorganized Debtor.

43. File, Filed, or Filing means, respectively, properly file, filed, or filing in this chapter 11 case with the Bankruptcy Court.

44. Final Order means an order or judgment of the Bankruptcy Court, as entered on the docket of the Bankruptcy Court, that has not been reversed, stayed, modified, or amended, and as to which (i) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending, or (ii) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the appeal has been dismissed by the appellant or by agreement; *provided, however*, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

45. General Bar Date means June 10, 2024, as set forth in the *Scheduling Order After Chapter 11 Status Conference* [Docket No. 61].

46. General Unsecured Claim means any Claim that is not (i) an Administrative Claim, (ii) a Fee Claim, (iii) a Priority Tax Claim, (iv) an Other Priority Claim, (v) a Secured Claim or (vi) a Subordinated Claim.

47. General Unsecured Claim Distribution Fund means $700,000 in Cash available for Distributions to the Holders of Allowed General Unsecured Claims as determined by the Reorganized Debtor from time to time in accordance with Article V.G of this Plan.

48. Governmental Unit has the meaning set forth in section 101(27) of the Bankruptcy Code.

49. Government Bar Date means August 26, 2024.

50. Holder or Holders means a Person or an Entity holding a Claim or Interest.

51. Impaired means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

52. Impaired Class means a Class of Claims or Interests that is Impaired.

53. Insider has the meaning set forth in section 101(31) of the Bankruptcy Code.

54. Interest means an equity security, within the meaning of section 101(16) of the Bankruptcy Code, in the Debtor.

55. Lien means: (i) a judicial lien as defined in section 101(36) of the Bankruptcy Code; (ii) a lien as defined in section 191(37) of the Bankruptcy Code; (iii) a security interest as defined in section 101(51) of the Bankruptcy Code; (iv) a statutory lien as defined in section 101(53) of the Bankruptcy Code; and (v) any other lien, interest, charge or encumbrance.

56. New Equity Interests means the Interests in the Reorganized Debtor that will exist as of the Effective Date in accordance with the terms of the Plan.

57. Objection means any objection, application, motion, complaint or any other legal action seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, establish the priority of, expunge, subordinate or estimate any Claim (including any objection or opposition to any request for allowance or payment of any Administrative Claim).

58. Other Priority Claim means any Claim entitled to priority under section 507(a) of the Bankruptcy Code that is not a Priority Tax Claim.

59. Person is defined in section 101(41) of the Bankruptcy Code.

60. Petition Date means February 28, 2024, the date the Debtor commenced its chapter 11 case in the Bankruptcy Court.

61. Plan means this plan of reorganization under chapter 11 of the Bankruptcy Code, together with any amendments or modifications hereto as the Debtor may file hereafter in accordance with the terms of this Plan (such amendment or modifications only being effective upon compliance with Article XI.B of the Plan).

62. Plan Documents means the documents, other than this Plan, to be executed, delivered, assumed or performed in connection with the consummation of this Plan, including, without limitation, the documents to be included in any Plan Supplement, and any and all exhibits to the Plan and Disclosure Statement.

63. Plan Supplement means any supplement to this Plan, filed with the Bankruptcy Court not less than seven calendar days before the Voting Deadline, which may contain, among other things, any schedules, lists, or documents that supplement or clarify aspects of this Plan and are identified as part of the Plan Supplement.

64. Priority Tax Claim means any Claim of a Governmental Unit entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

65. Pro Rata Share means, with respect to any Distribution on account of an Allowed Claim, a Distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

66. Professional or collectively Professionals means any professional Person or Entity employed in this chapter 11 case by Bankruptcy Court order pursuant to sections 327, 328, or 363 of the Bankruptcy Code.

67. Related Persons means collectively with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, equity holders (regardless of whether such interests are held directly or indirectly), members, managers, managed accounts or funds, fund advisors, advisory or committee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case acting in such capacity at any time during this chapter 11 case following the Petition Date.

68. Reorganized Debtor means, on or after the Effective Date, the Debtor, as reorganized pursuant to and under the Plan, or any successor thereto.

69. SBA means Small Business Administration.

70. Schedules mean the schedules of assets and liabilities and statement of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

71. Secured Claim means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, Lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or nonbankruptcy law, in or upon any right, title or interest of the Debtor in and to property of the Estate, to the extent of the value of the Holder's interest in such property as of the relevant determination date, or (b)

Allowed as such pursuant to the terms of this Plan (subject to the Confirmation Order becoming a Final Order). The defined term Secured Claim includes any Claim that is (i) subject to an offset right under applicable law as of the Petition Date, and (ii) a secured claim against the Debtor pursuant to sections 506(a) and 553 of the Bankruptcy Code.

72. SellersFunding means SellersFunding International Portfolio Ltd.

73. Solicitation Materials means all solicitation materials with respect to the Plan, including the Disclosure Statement and related ballots.

74. Subordinated Claim means any Claim subject to subordination, whether pursuant to a Final Order of the Bankruptcy Court under section 510 of the Bankruptcy Code or by written consent of the Holder of such Claim, whether such Final Order is entered or such consent is given prior to or following the Effective Date.

75. Unclaimed Distributions mean any Cash or other distributable property unclaimed on or after the Effective Date or the date on which an additional Distribution would have been made in respect of an Allowed Claim. Unclaimed Distributions shall include (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address, (b) funds for uncashed checks, (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, and (d) any Distribution deemed to be an Unclaimed Distribution pursuant to section 13.7 of this Plan.

76. Unexpired Lease means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

77. Unimpaired means, when used in reference to a Claim or Interest, any Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

78. U.S. Trustee Fees mean fees payable pursuant to 28 U.S.C. § 1930, to the extent applicable to this chapter 11 case.

79. Voting Class means a Class whose members are entitled to vote on this Plan.

80. Voting Deadline means the date specified in the Disclosure Statement, the order approving the Disclosure Statement, the Ballots or related Solicitation Materials approved by the

Bankruptcy Court as the last date for Holders of Claims entitled to vote on this Plan to submit their ballots with respect to this Plan, as such date may be extended.

**B. <u>Rules of Interpretation</u>**

1. Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein, unless the context requires otherwise. The words "include" and "including" shall mean "include, without limitation," or "including," as the case may be. Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural. Any term that is not otherwise defined herein, but used in the Bankruptcy Code or the Bankruptcy Rules, is used as defined in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

2. Any reference in this Plan to a contract, instrument, release, or other agreement or documents being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. Subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, release, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

3. The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any reference to any entity as a holder of a Claim or Interest includes that entity's successors and assigns.

# III.

# CLASSIFICATION AND TREATMENT OF CLAIMS UNDER THE PLAN

## A. General Overview

As required by the Bankruptcy Code, the Plan classifies Claims and Interests according to their right to priority of payment as provided in the Bankruptcy Code. Except for certain types of Claims that do not get put into classes, the Plan classifies Claims and Interests for all purposes, including voting, confirmation and distributions under the Plan. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

All Claims and Interests, except Administrative Claims, Fee Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Fee Claims and Priority Tax Claims, as described herein, have not been classified, and the respective treatment of such unclassified Claims is set forth below in Article IV of the Plan.

## B. Unimpaired Classes of Claims

**Class 6: Other Priority Claims.** Class 6 shall consist of Other Priority Claims against the Debtor. Class 6 Claims are Unimpaired by the Plan and the Holders of the Allowed Class 6 Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

## C. Impaired Classes of Claims

**Class 1: Amazon Secured Claim.** Class 1 shall consist of Amazon's Secured Claim against the Debtor. The Class 1 Claim is Impaired by the Plan and the Holder of the Allowed Class 1 Claim is entitled to vote to accept or reject the Plan.

**Class 2: SBA Secured Claim.** Class 2 shall consist of the SBA's Secured Claim against the Debtor. The Class 2 Claim is impaired by the Plan and the Holder of the Allowed Class 2 Claim is entitled to vote to accept or reject the Plan.

**Class 3: SellersFunding Secured Claim.** Class 3 shall consist of SellersFunding's Secured Claim against the Debtor. The Class 3 Claim is Impaired by the Plan and the Holder of the Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

**Class 4: 8fig Secured Claim.** Class 4 shall consist of 8fig's Secured Claim against the Debtor. The Class 4 Claim is Impaired by the Plan and the Holder of the Allowed Class 4 Claim is entitled to vote to accept or reject the Plan.

**Class 5: Clearco Secured Claim.** Class 5 shall consist of Clearco's Secured Claim against the Debtor. The Class 5 Claim is Impaired by the Plan and the Holder of the Allowed Class 5 Claim is entitled to vote to accept or reject the Plan.

**Class 7: General Unsecured Claims.** Class 7 shall consist of Allowed General Unsecured Claims against the Debtor. Class 7 Claims are Impaired by the Plan and entitled to vote to accept or reject the Plan.

**Class 8: Subordinated Claims.** Class 8 shall consist of all Subordinated Claims. Because Holders of Class 8 Subordinated Claims will receive no Distribution under the Plan, Holders of Class 8 Subordinated Claims are deemed to reject the Plan, and therefore, not entitled to vote on the Plan.

**D. Impaired Class of Equity Interests**

**Class 9: Equity Interests.** Class 9 shall consist of all Existing Equity Interests. Because Holders of Class 9 Equity Interests will receive no Distribution under the Plan, Holders of Class 9 Equity Interests are deemed to reject the Plan and, therefore, not entitled to vote on the Plan.

## IV.

## TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to section 1126(f) of the Bankruptcy Code, Holders of Unimpaired Claims are conclusively presumed to have accepted this Plan. The Holders of Administrative Claims, Fee Claims, and Priority Tax Claims are not Impaired under this Plan.

**A. <u>Administrative Claims</u>.**

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim, each Holder of an Allowed Administrative Claim (other than Holders of Fee Claims and Claims for U.S. Trustee Fees) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the Allowed amount of such Administrative Claim either: (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order Allowing such Administrative Claim becomes a Final Order; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim; (d) at such time as may be agreed upon by (i) if before the Effective Date, such Holder and the Debtor or (ii) if after the Effective Date, such Holder and the Reorganized Debtor; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

The Debtor does not anticipate Administrative Claims being due on the Effective Date other than Fee Claims, claims for U.S. Trustee Fees, and ordinary course expenses of administration.

Holders of Administrative Claims, other than Fee Claims and U.S. Trustee Fees, must File and serve on counsel to the Reorganized Debtor requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, so as to be actually received on or before the Administrative Claim Bar Date. Any Person or Entity required to timely File such Claim but fails to do so shall not be treated as a creditor with respect to such Claim for the purpose of voting and distribution in this chapter 11 case on account of such Claim. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Administrative Claim Bar Date and shall constitute notice of such Bar Date.

With respect to U.S. Trustee Fees, all fees due and payable to the U.S. Trustee pursuant to section 1930 of Title 28 of the United States Code, together with the statutory rate of interest set forth

in section 3717 of Title 31 of the U.S. Code, to the extent applicable ("Quarterly Fees") before the Effective Date shall be paid by the Debtor on the Effective Date. The Debtor estimates that $39,630 in U.S. Trustee Fees will be due as of the Effective Date.

After the Effective Date, the Reorganized Debtor shall be liable and shall pay all Quarterly Fees accruing from and after the Effective Date when due and payable until the earliest to occur of the Debtor's case being converted to a case under chapter 7 of the Bankruptcy Code, dismissed, or closed. The U.S. Trustee shall not be required to file a request for payment of its Quarterly Fees, which shall be deemed an Administrative Claim against the Debtor and its Estate. The Debtor shall file all monthly operating reports due before the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Reorganized Debtor shall file with the Bankruptcy Court UST Form 11-PCR reports when they become due.

**B. <u>Fee Claims</u>.**

All requests for payment of Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed by the date that is 30 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code. If an application for a Fee Claim is not Filed within 30 days after the Effective Date, such Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the deadline to File requests for payment of Fee Claims.

The estimates of Fee Claims due as of the effective date are $1,325,000, comprised as follows:

| | |
|---|---|
| Saul Ewing | $800,000 |
| Armory Consulting | $225,000 |
| Committee Counsel | $200,000 |
| Committee Financial Advisor | $100,000 |
| TOTAL | $1,325,000 |

**C. Priority Tax Claims.**

Unless otherwise agreed to by the Holder of an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full and final satisfaction of such Allowed Priority Tax Claim Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim either: (a) if a Priority Tax Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter; (b) if such Priority Tax Claim is not Allowed as of the Effective Date, no later than 45 days after the date on which an order Allowing such Priority Tax Claim becomes a Final Order; (c) at such time as may be agreed upon by (i) if prior to the Effective Date, such Holder and the Debtor or (ii) if after the Effective Date, such Holder and the Reorganized Debtor; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided, however, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid by the Reorganized Debtor, as applicable, in the ordinary course as they become due. Any Claim or demand for any penalty (a) will be subject to treatment as a General Unsecured Claim, if and to the extent it is an Allowed Claim, and (b) the Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such amounts from the Debtor, the Estate, or the Reorganized Debtor, as applicable, except as a General Unsecured Claim, if and to the extent it is an Allowed Claim.

## V.

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

The Claims in Class 6 are Unimpaired, conclusively deemed to accept the Plan and are not entitled to vote on the Plan. The Claims in Classes 1, 2, 3, 4, 5 and 7 are Impaired and entitled to vote to accept or reject this Plan. Holders of Claims in Class 8 and Interests in Class 9 are conclusively deemed to reject the Plan and, therefore, are not entitled to vote on the Plan.

**A. Class 1: Amazon Secured Claim.**

Except to the extent that Amazon, as the Holder of the Allowed Class 1 Secured Claim, agrees to different treatment, Amazon will have an Allowed Secured Claim. Amazon will receive $22,887 per month (the amount of adequate protection payments) through December 31, 2024. Thereafter, Amazon shall receive the balance of its Secured Claim of $350,000 plus interest owed to Amazon in

monthly installments over three years commencing January 2025, which Amazon is assigning to its affiliate Amazon Advertising (an otherwise unsecured creditor). Amazon's Secured Claim includes $46,477.28 as an agreed-upon Cure Amount for the Executory Contract between Amazon Advertising and the Debtor. Since Amazon has an undisputed secured claim, and a right to assign its interest, the transfer of the Secured Claim to Amazon Advertising has no impact on other creditors.

**B. Class 2: SBA Secured Claim.**

Except to the extent that the SBA, as the Holder of the Allowed Class 2 Secured Claim, agrees to different treatment, the SBA will receive, on account of its Allowed Secured Claim, Cash in an amount equal to the Allowed amount of its Secured Claim, payable over a period of five years following the Effective Date, with interest per contract terms, in equal monthly installments, with the first payment to be made on the first business day of the month that is at least 30 days following the Effective Date. Other than the modified term, the remaining contract terms are unchanged.

**C. Class 3: SellersFunding Secured Claim.**

Except to the extent that SellersFunding, as the Holder of the Allowed Class 3 Secured Claim, agrees to different treatment, SellersFunding will be deemed to hold an Allowed Secured Claim in the amount of the Adequate Protection Payments it has received from the Petition Date through the Effective Date.

**D. Class 4: 8fig Secured Claim.**

Except to the extent that 8fig, as the Holder of the Allowed Class 4 Secured Claim, agrees to different treatment, 8fig will be deemed to hold an Allowed Secured Claim in the amount of $2,550,000.

Notwithstanding any other provision to the contrary regarding Distribution timing, subject to the Bankruptcy Court's approval of the 8fig 9019 Motion, and as agreed to by 8fig and Debtor, 8fig shall have an Allowed Secured Claim in the amount of $2,550,000.00 inclusive of Adequate Protection Payments paid through the Effective Date, and will receive, on account of this Allowed Secured Claim, Cash in an amount equal to the Allowed amount of its Secured Claim, payable over a period of five years following the Effective Date, without interest, in equal monthly installments, with the first payment to be made on the first business day of the month that is at least 30 days

following the Effective Date. Further, 8fig shall hold an Allowed General Unsecured Claim in the amount of $650,000.00 to be paid in accordance with Class 7.

Further, subject to Court approval, the Debtor and 8fig shall exchange mutual general releases with respect to the Debtor and 8fig and their respect Related Persons, which shall only become effective upon payment in full of the Allowed Secured Claim hereunder. Further, the Debtor and 8fig agree that, during the pendency of this chapter 11 case and the Plan, all applicable statute of limitations shall toll, and 8fig shall not commence any action against the Debtor or any Related Person of the Debtor unless and until there is a material uncured default under the Plan.

Additionally, 8fig's security interest as evidenced in its UCC-1 bearing file number U220251435521 shall not be released, terminated, or amended, except as may be required to extend the same under applicable law, until 8fig receives all Distributions for its Allowed Secured Claim, in full, and in the event of default of the Plan, 8fig shall be entitled to enforce said security interest. 8fig shall also be allowed to file any necessary amendments to extend the security interest until paid hereunder.

**E. Class 5: Clearco Secured Claim.**

Except to the extent that Clearco, as the Holder of the Allowed Class 5 Secured Claim, agrees to different treatment, Clearco will be deemed to hold an Allowed Secured Claim in the amount of the Adequate Protection Payments it has received from the Petition Date through the Effective Date.

**F. Class 6: Other Priority Claims.**

Unless otherwise agreed to by the Holder of an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim will receive in full and final satisfaction of such Allowed Other Priority Claim an amount of Cash equal to the unpaid portion of such Allowed Other Priority Claim either: (a) if an Other Priority Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter; (b) if such Other Priority Claim is not Allowed as of the Effective Date, no later than 45 days after the date on which an order allowing such Other Priority Claim becomes a Final Order; (c) at such time as may be agreed upon by (i) if prior to the Effective Date, such Holder and the Debtor or (ii) if after the Effective Date, such Holder and the

Reorganized Debtor; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

**G. Class 7: General Unsecured Claims.**

Except to the extent that the Holder of an Allowed Claim in Class 7 agrees to less favorable treatment, each Holder of an Allowed Claim in Class 7 shall receive, in full and final satisfaction, settlement, and release of and in exchange for its Allowed Class 7 Claim its Pro Rata Share of the General Unsecured Claim Distribution Fund. Allowed General Unsecured Claims are projected to receive Distributions valued at about 3.6% of their respective Allowed Claims, which projection is calculated based on estimated General Unsecured Claims listed of approximately $19.2 million.

**H. Class 8: Subordinated Claims.**

Holders of Subordinated Claims shall receive no Distribution on account of their Subordinated Claims pursuant to the Plan.

**I. Class 9: Equity Interests.**

On the Effective Date, all Existing Equity Interests shall be deemed canceled, extinguished, and discharged and of no further force or effect, and each Holder of an Existing Equity Interest in the Debtor shall receive no Distribution pursuant to the Plan. On the Effective Date, New Equity Interests shall be issued in the Reorganized Debtor—45% to Aiden Chien and 55% to Tony Li; provided, however, that if the Debtor's Equity Sale Process yields a higher and better offer, then the New Equity Interests will be issued to the successful purchaser.

**J. Reservation of Rights Regarding Claims and Interests.**

Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtor's rights and defenses, both legal and equitable, with respect to any Claims or Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

# VI.

## MEANS OF IMPLEMENTING THE PLAN

**A. Funding for the Plan.**

Distributions to creditors holding Allowed Secured Claims under the Plan will be paid from the Debtor's projected net disposable income. A schedule showing the financial projections is attached to the Disclosure Statement. Distributions to creditors holding Allowed General Unsecured Claims under the Plan will come from the General Unsecured Creditors Distribution Fund, which will be funded from the Debtor's future revenue, and will be distributed to General Unsecured Creditors on Distribution Dates at the end of the calendar year in 2026, 2027 and 2028, and in September 2029.

**B. Vesting of Assets in Reorganized Debtor.**

On the Effective Date, the Debtor's assets shall vest in the Reorganized Debtor for the purpose of consummating the Plan. The Debtor's assets shall be held free and clear of all Liens, Claims, and Interests of Holders of Claims and Interests, except as otherwise provided in the Plan. The Reorganized Debtor shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

**C. Restructuring Transactions.**

Before, on and after the Effective Date, the Debtor or Reorganized Debtor, as applicable, shall take all actions as may be necessary or appropriate to effectuate the Plan, including: (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any of the Debtor's assets on terms consistent with the terms of this Plan; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; and (d) such other transactions that are required, or that the applicable parties determine to be necessary or appropriate, to effectuate the reorganization of the Debtor's business.



52577162.2 390877-00001
52675387.1

**D. <u>Cancellation of Existing Equity Interests; Issuance of New Equity Interest</u>.**

On the Effective Date, all Existing Equity Interests shall be canceled, and the New Equity Interests shall be issued to either Aiden Chien and Tony Li or the successful bidder of the Equity Sale Process, as applicable. The New Equity Interests when issued will be duly authorized, validly issued and, if applicable, fully paid and nonassessable.

**E. <u>Corporate Existence</u>.**

On the Effective Date, the Debtor shall continue to exist after the Effective Date as a separate corporation with all the powers of a corporation pursuant to California law and the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

**F. <u>Directors and Officers of the Reorganized Debtor</u>.**

On the Effective Date, the Debtor's directors and officers—Tony Li, Chief Executive Officer, and Aiden Chien, Chief Operating Officer—will remain the directors and officers of the Reorganized Debtor; provided, however, that if an outside investor is the successful bidder under the Equity Sale Process, then the outside investor shall select the directors and officers of the Reorganized Debtor.

**G. <u>Cancellation of Instruments and Documents</u>.**

On the Effective Date, except with respect to Secured Claims reflected in Classes 1 through 5 in this Plan, any and all notes, instruments, debentures, certificates and other documents evidencing Claims against and Interests in the Debtor shall be deemed automatically extinguished, canceled, and of no further effect with the Debtor having no continuing obligations thereunder, and shall be deemed rejected and terminated.

**H. <u>Release of Liens</u>.**

Except as otherwise provided in this Plan, the Confirmation Order, or in any document, instrument, or other agreement created in connection with this Plan, upon final Distributions to Holders of Allowed Claims, all mortgages, deeds of trust, Liens, or other security interests against

the property of the Estate shall be released. The Reorganized Debtor shall have the authority to file lien releases in connection with the foregoing.

**I. <u>Exemption from Certain Transfer Taxes</u>.**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtor or Reorganized Debtor, as applicable, to any other Entity pursuant to this Plan shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any applicable instruments or documents without the payment of any such tax or governmental assessment.

**J. <u>Setoffs</u>.**

On or after the Effective Date, the Reorganized Debtor, may, pursuant to applicable law (including section 553 of the Bankruptcy Code), offset against any Claim, including an Administrative Claim, before any Distribution is made on account of such Claim, any and all of the claims, rights and Causes of Action of any nature that the Debtor or Reorganized Debtor may hold against the Holder of such Claim.

**K. <u>Withdrawal of Plan</u>.**

The Debtor reserves the right to revoke and withdraw or modify this Plan at any time prior to the Confirmation Date or, if the Debtor is for any reason unable to consummate this Plan after the Confirmation Date, at any time up to the Effective Date. If the Debtor revokes or withdraws this Plan, (a) nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims by or against the Debtor or to prejudice in any manner the rights of the Debtor or any Entity in any further proceeding involving the Debtor and (b) the result shall be the same as if the Confirmation Order were not entered, this Plan was not filed and the Effective Date did not occur.

**L.** **No Separate Disbursing Agent.** The Reorganized Debtor shall serve as the Disbursing Agent under the Plan for all creditors.

## VII.

## DISTRIBUTIONS

**A.** **Distributions to be Made Pursuant to the Plan.**

Distributions to be made to Holders of Allowed Claims shall be made as set forth in Article V of this Plan.

No Distribution shall be made by the Reorganized Debtor with respect to a Disputed Claim until the same, or some portion thereof, becomes an Allowed Claim. Except as set forth expressly herein for specific Claims, on the first Distribution Date after a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor shall commence making Distributions on account of such Claim. Such distributions shall be made pursuant to the provisions of this Plan governing the applicable Class.

**B.** **Disputed General Unsecured Claims.**

On the Effective Date and prior to making any Distributions from the General Unsecured Claim Distribution Fund, the Reorganized Debtor shall establish a reserve for Disputed General Unsecured Claims and, before the first Distribution to General Unsecured Creditors in 2026, shall transfer thereto the amount of Cash from the General Unsecured Claim Distribution Fund as deemed necessary by the Reorganized Debtor to provide Pro Rata Distributions to Holders of Allowed General Unsecured Claims if the Disputed General Unsecured Claims become Allowed in accordance with the provisions of this Plan.

**C.** **Objections to and Estimation of Claims.**

Unless otherwise provided in this Plan, after the Effective Date through the Claims Objection Deadline, the Reorganized Debtor shall have sole and exclusive standing to object to Claims in order to have the Bankruptcy Court determine the amount and treatment of any Claim. From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Except as otherwise provided in this Plan, if a party files a proof of claim and (i) the Debtor or Reorganized Debtor, as applicable, Files an Objection to that Claim or

otherwise formally challenges the Claim, or (ii) the Claim otherwise is a Disputed Claim under this Plan, then such Claim shall be Disputed unless Allowed or Disallowed by a Final Order or as otherwise set forth in this Plan. Except as otherwise provided in this Plan, all proofs of claim filed after the Effective Date shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor, the Estate or the Reorganized Debtor, as applicable, without the need for any objection or any further notice to or action, order, or approval of the Bankruptcy Court.

Except as set forth in this Plan with respect to Administrative Claims, all Objections to Claims must be filed and served on the Holders of such Claims by the applicable Claims Objection Deadline, as the same may be extended by the Bankruptcy Court. If an Objection has not been filed to a proof of claim or the Schedules have not been amended with respect to a Claim that (i) was scheduled by the Debtor but (ii) was not Scheduled as contingent, unliquidated, and/or disputed, by the applicable Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the proof of claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier. Notice of any motion for an order extending the Claims Objection Deadline shall be required to be given only to those Entities that have requested notice in this chapter 11 case, or to such Entities as the Bankruptcy Court shall order.

**D. Delivery of Distributions and Undeliverable or Unclaimed Distributions.**

1. Delivery of Distributions in General.

Distributions to Holders of Allowed Claims shall be made (i) at the addresses set forth on the proofs of claim filed by such Holders, (ii) at the addresses set forth in any written notices of address changes delivered to the Debtor or Reorganized Debtor after the date of any related proofs of claim, (iii) at the addresses reflected in the Schedules if no proof of claim has been filed and the Reorganized Debtor has not received a written notice of a change of address, (iv) at the addresses set forth in the other records of the Reorganized Debtor at the time of the Distribution, or (v) any change of address as reflected on the Bankruptcy Court docket.

2. Undeliverable and Unclaimed Distributions.

If the Distribution to any Holder of an Allowed Claim is returned to the Reorganized Debtor as undeliverable or is otherwise an Unclaimed Distribution, no further Distributions shall be made to such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest.

3. Treatment of Unclaimed Distributions.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an Unclaimed Distribution within three (3) months after the final Distribution Date shall be deemed to have forfeited its Claim for such undeliverable or Unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an Unclaimed Distribution against the Debtor and its Estate, the Reorganized Debtor, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property, as the case may be. In such cases, any Cash otherwise reserved for Unclaimed Distributions shall re-vest in the Reorganized Debtor free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be distributed in accordance with the terms of this Plan. Nothing contained in this Plan shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

**E. Interest on Claims.**

Except as specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder shall be entitled to interest accruing on or after the Petition Date on any Claim. Except as specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

**F. Withholding and Reporting Requirements.**

In connection with this Plan and all Distributions under this Plan, the Reorganized Debtor shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan

shall be subject to any such withholding, payment, and reporting requirements. The Reorganized Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements. All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder.

All Entities holding Claims shall be required to provide any information necessary to effect information reporting and withholding of such taxes. No Distribution shall be made to or on behalf of such Entity pursuant to this Plan unless and until such Entity has furnished such information. Any property to be distributed pursuant to this Plan shall be deemed: (i) pending the receipt of such information in the manner established by the Reorganized Debtor, an Unclaimed Distribution pursuant to Article VII.D.2 of this Plan; or (ii) if such information is not received by the final Distribution Date, forfeited and treated in accordance with Article VII.D.3 of this Plan.

Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Debtor or Reorganized Debtor for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Reorganized Debtor in connection with such Distribution.

**G. Miscellaneous Distribution Provisions.**

1. Method of Cash Distributions.

Any Cash payment to be made by the Reorganized Debtor pursuant to this Plan will be in U.S. dollars and may be made, at the sole discretion of the Reorganized Debtor by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law. In the case of foreign creditors, Cash payments may be made, at the option of the Reorganized Debtor, in such funds and by such means as are necessary or customary in a particular jurisdiction.

2. Distributions on Non-Business Days.

Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

**H. *De Minimis* Distribution Provisions.**

No Distribution shall be required to be made hereunder to any Holder of a Claim unless such Holder is to receive in such Distribution at least $25.00. Any Distribution not made pursuant to this Article VII.H shall be treated as an Unclaimed Distribution and is subject to Article VII.D hereof, without regard to any time limited in Article VII.D.3 of this Plan.

**I. Distribution Record Date.**

The Reorganized Debtor will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of Allowed Claims that are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date. The Reorganized Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with only those record Holders stated on the official claims register as of the close of business on the Distribution Record Date.

**J. Residual Cash in General Unsecured Claim Distribution Fund.**

After final Distributions have been made in accordance with the terms of this Plan, the remaining Cash in the General Unsecured Claim Distribution Fund shall revest in the Reorganized Debtor.

## VIII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A. Assumption of Executory Contracts and Unexpired Leases.**

Unless otherwise specified herein or in the Plan Supplement, on the Effective Date, and subject to the payment of any applicable cure Amounts, all Executory Contracts to which the Debtor is a party, and which have not expired by their own terms on or prior to the Confirmation Date shall be deemed assumed except for any executory contract that: (a) the Debtor previously assumed, assumed and assigned or rejected, or (b) for which, prior to the Effective Date, the Debtor Filed a

motion to assume, assume and assign, or reject, on which the Bankruptcy Court has not ruled. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all assumptions of Executory Contracts and unexpired leases pursuant to this Article and sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract assumed pursuant to this Plan shall vest in, and be fully enforceable by, the Reorganized Debtor in accordance with its terms, except as modified by the provisions of this Plan, and any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law. The Debtor shall file and serve on parties to Executory Contracts to be assumed a notice reflecting the Debtor's intention to assume the contract in connection with this Plan and setting forth the proposed Cure Amount (if any). If the counterparty believes any different Cure Amount is due in connection with the assumption or otherwise objects to the assumption, it must assert such Cure Amount or any other objection by Filing an objection with the Bankruptcy Court and serving such objection in accordance with the procedures to be set forth in the Debtor's notice.

## IX.

## EFFECT OF PLAN ON CLAIMS AND INTERESTS

### A. Binding Effect.

This Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, and their respective successors and assigns, including, but not limited to, the Reorganized Debtor.

### B. Compromise and Settlement.

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the Plan is and shall be deemed a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the

Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein shall be deemed non-severable from each other and from all other terms of this Plan. In accordance with the provisions of this Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against, and Interests in, the Debtor and its Estate and Causes of Action against other Entities.

Notwithstanding anything contained in this Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective Distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class with due regard to any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, sections 510(b) and (c) of the Bankruptcy Code or otherwise. Notwithstanding any other provision in this Plan, the settlements are approved among the parties that have expressly agreed to them, and the treatment of claims and interests is being afforded pursuant to confirmation by satisfying the requirement of section 1129 of the Bankruptcy Code.

**C. Discharge**.

On and after the Effective Date, the Debtor shall be discharged to the fullest extent permitted under section 1141(d) of the Bankruptcy Code from any debt that arose before the date of confirmation of this Plan, and any debt of a kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. This Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject this Plan. Any litigation pending prepetition or initiated postpetition in any court other than the Bankruptcy Court where relief from stay was not obtained from the Bankruptcy Court shall be deemed discharged upon the Effective Date. The foregoing discharge shall not apply to the ability of Holders of Allowed Claims to recover from the Reorganized Debtor an account of such Allowed Claims and/or Interests, all in accordance with the terms of this Plan.

**D. <u>Injunction</u>.**

**Except as provided in this Plan, to the fullest extent permitted by law, or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim, Interest, or other debt or liability that is satisfied, released and discharged pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions against the Debtor, the Reorganized Debtor, or their respective property on account of any such discharged Claims, debts, liabilities or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; or (iv) asserting a setoff unless such setoff was formally asserted in a timely Filed proof of Claim or in a pleading Filed with the Bankruptcy Court prior to entry of the Confirmation Order or right of subrogation of any kind against any debt, liability, or obligation due to the Debtor or the Reorganized Debtor. This injunction shall terminate as to a Noticing Creditor upon the occurrence of an uncured default as to such Noticing Creditor as defined in Article XI.J of this Plan.**

**E. <u>Exculpation</u>.**

**Notwithstanding anything contained in this Plan to the contrary, the Exculpated Parties, and any property of the Exculpated Parties, shall not have or incur any liability to any Entity for any act taken or omitted to be taken from the Petition Date through the Effective Date in connection with, related to or arising from the formulation, negotiation, preparation, dissemination, implementation, or administration of this Plan, the Solicitation Materials, the Disclosure Statement, or any contract, instrument, or other agreement or document created or entered into in connection with this Plan, or any other act taken or omitted to be taken from the Petition Date through the Effective Date in connection with or in contemplation of the reorganization of the Debtor, this chapter 11 case, or the confirmation or consummation of this Plan, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administrating this Plan (including soliciting acceptances or rejections thereof if necessary); (ii) the Disclosure Statement, or any contract, instrument,**

**release or other agreement or document entered into or any action taken or not taken in connection with this Plan; (iii) the Equity Sale Process or any contract, instrument, or other agreement or document entered into or any action taken or not taken in connection with the Equity Sale Process; or (iv) any Distributions made pursuant to this Plan, except for acts constituting fraud, willful misconduct, bad faith, or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan. Notwithstanding the foregoing, for the avoidance of doubt, the exculpation section of this Plan shall not (i) exculpate or release the Exculpated Parties from anything other than as expressly identified in the first sentence of this section, (ii) prevent or limit the ability of the Reorganized Debtor to object to a Claim of an Exculpated Party on any basis other than matters exculpated or released in this section including prepetition conduct, and (iii) prevent or limit the ability of the Reorganized Debtor to object to, or defend against, on any basis, any Administrative Claim of an Exculpated Party for substantial contribution.**

**F. Terms of Injunctions or Stays.**

Unless otherwise provided in this Plan, all injunctions or stays provided for in this chapter 11 case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## X.

## CONFIRMATION AND CONSUMMATION OF THE PLAN

**A. Conditions to Confirmation.**

The following are conditions precedent to the occurrence of the Confirmation Date.

1. A Final Order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered by the Bankruptcy Code;
2. Entry of a Confirmation Order that is reasonably acceptable to the Debtor; and
3. Approval of all provisions, terms, and conditions hereof shall be contained in the Confirmation Order.

**B. Conditions to Effective Date.**



52577162.2 390877-00001
52675387.1

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing:

1. The Confirmation Order shall have been entered and shall provide that the Debtor or the Reorganized Debtor, as applicable, are authorized and directed to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with this Plan and effectuate, advance, or further the purposes thereof;
2. The Confirmation Order, the Plan, and all Plan Exhibits shall be, in form and substance, reasonably acceptable to the Debtor, and shall have been executed and delivered by all parties signatory thereto, as applicable;
3. All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed;
4. The Confirmation Order shall have become a Final Order; and
5. The Debtor shall have filed a Notice of Effective Date.

**C. <u>Consequences of Non-Occurrence of Effective Date</u>.**

If the Effective Date does not timely occur, the Debtor reserves all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated and that this Plan be null and void in all respects. If the Bankruptcy Court enters an order vacating the Confirmation Order, the time within which the Debtor may assume and assign or reject all Executory Contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions.

## XI.

## <u>ADMINISTRATIVE PROVISIONS</u>

**A. <u>Retention of Jurisdiction</u>.**

Notwithstanding confirmation of this Plan or occurrence of the Effective Date, and except as otherwise provided by applicable law, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including for the following purposes:

1. To determine the allowability, classification, or priority of Claims upon objection of the Reorganized Debtor or any other party in interest entitled to file an objection, and the validity, extent, priority and nonavoidability of consensual and nonconsensual liens and other encumbrances;

2. To issue injunctions and take such other actions or make such other orders as may be necessary or appropriate to restrain interference with this Plan or its execution or implementation by any Entity, to construe and to take any other action to enforce and execute this Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of this Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Cour this chapter 11 case on or before the Effective Date with respect to any Entity;

3. To protect the property of the Estate from claims against, or interference with, such property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning Liens on property of the Estate;

4. To determine any and all applicable for allowance of Fee Claims;

5. To determine any Other Priority Claim, Administrative Claims or any other request for payment of claims or expenses entitled to priority under section 507(a) of the Bankruptcy Code;

6. To resolve any disputes arising under or related to the implementation, execution, consummation or interpretation of this Plan and the making of Distributions hereunder;

7. To determine any and all motions related to the rejection, assumption or assignment of Executory Contracts or unexpired leases;

8. To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in and prior to the closing of this chapter 11 case, including any remands;

9. To enter a Final Order closing the Debtor's chapter 11 case;

10. To modify this Plan under section 1127 of the Bankruptcy Code, to remedy any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order so as to carry out its intent and purposes;

11. To issue such orders in aid of consummation of this Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by the Bankruptcy Code;

12. To enable the Reorganized Debtor to prosecute any and all proceedings to set aside Liens and to recover any transfers, assets, properties or damages to which the Estate may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws except as may be expressly waived pursuant to this Plan;

13. To determine any tax liability of the Debtor or Reorganized Debtor pursuant to section 505 of the Bankruptcy Code;

14. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

15. To resolve any disputes concerning whether an Entity had sufficient notice of the chapter 11 case, the General Bar Date or otherwise applicable Claims bar date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing;

16. To resolve any dispute or matter arising under or in connection with any order of the Bankruptcy Court entered in this chapter 11 case;

17. To resolve any disputes concerning any exculpation of a non-debtor hereunder or the injunction against acts, employment of process or actions against such non-debtor arising hereunder;

18. To approve any Distributions, or objections thereto, under this Plan;

19. To approve any Claims settlement entered into or offset exercised by the Reorganized Debtor; and

20. To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

**B. Amendments**.

1. Preconfirmation Amendment. The Debtor may modify this Plan at any time prior to the entry of the Confirmation Order, provided that this Plan, as modified, and the disclosure statement pertaining thereto meet applicable Bankruptcy Code requirements.

2. Postconfirmation Amendment Not Requiring Resolicitation. After the entry of the Confirmation Order, the Debtor may modify this Plan to remedy any defect or omission or to reconcile any inconsistencies in this Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of this Plan, provided that: (i) the Debtor obtains approval of the Bankruptcy Court for such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment or Distributions of any Class of Allowed Claims or Interests under this Plan.

3. Postconfirmation and Pre-consummation Amendment Requiring Resolicitation. After the Confirmation Date and before substantial consummation of this Plan, the Debtor may modify this Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a Class of Claims or Interests, provided that: (i) this Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtor obtains Bankruptcy Court approval for such modification, after notice and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims or Interests voting in each Class materially or adversely affected by such modification; and (iv) the Debtor complies with section 1125 of the Bankruptcy Code with respect to this Plan as modified

**C. Successors and Assigns.**

The rights, benefits and obligations of any person or entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such person or entity.

**D. Governing Law.**

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal laws apply, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of California, without giving effect to principles of conflicts of law.

**E. Corporate Action.**

Any matters provided for under this Plan involving the corporate structure of the Debtor or corporate action, as the case may be, to be taken by or required of the Debtor shall be deemed to have occurred and be effective as of the Effective Date and shall be authorized and approved in all respects, without any requirement of further action by the Debtor or Reorganized Debtor.

**F. Effectuating Documents and Further Transactions.**

The Debtor or Reorganized Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other actions as may be necessary to effectuate and further evidence the terms and conditions of this Plan.

**G. Dissolution of the Committee.**

On the Effective Date, the Committee shall dissolve; provided, however, that following the Effective Date, the Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (i) Claims or applications, and any relief related thereto, for compensation of Professionals and requests for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (ii) any appeals of the Confirmation Order. Upon the dissolution of the Committee, the Committee members and the Committee's Professionals shall cease to have any duty, obligation or role arising from or related to the chapter 11 case and shall be released and discharged from all rights and duties from or related to the chapter 11 case.

**H. Confirmation Order and Plan Control.**

To the extent this Plan is inconsistent with the Disclosure Statement, this Plan controls over the Disclosure Statement. To the extent the Confirmation Order is inconsistent with this Plan or the

Disclosure Statement, the Confirmation Order (and any other orders of this Bankruptcy Court) controls over this Plan and the Disclosure Statement.

**I. Miscellaneous Rules.**

This Plan is subject to the following miscellaneous rules: (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, unless superseded herein or in the Confirmation Order; (ii) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; and (iii) whenever this Plan provides that a payment or Distribution shall occur "on" any date, it shall mean "on, or as soon as reasonably practicable after", such date.

**J. Notice and Default.**

All notices or requests in connection with this Plan shall be in writing and will be deemed to have been given when received by mail and addressed to:

**Reorganized Debtor:**

Heycart Inc
Attn: Aiden Chien
2600 Michelson Dr., #1430
Irvine, California 92612

**Debtor:**

SAUL EWING LLP
Zev Shechtman
Carol Chow
1888 Century Park East, Suite 1500
Los Angeles, California 90067-6006
Telephone: (310) 255-6100
Facsimile: (310) 255-6200
Email: zev.shechtman@saul.com
carol.chow@saul.com

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Reorganized Debtor to make a payment or maintain the required insurance as to all Collateral to a creditor pursuant to the terms of this Plan shall be an event of default as to such payments, if the payment is not cured within fourteen (14) days after emailing and mailing written notice of default from such creditor (the "Noticing Creditor") to the Reorganized Debtor.

Any default notice, inquiry, or other formal communication pursuant to this Plan shall be emailed and mailed by certified mail, return receipt requested to the addresses listed above.

Unless otherwise agreed to in writing by a Noticing Creditor, the Debtor will be entitled to no more than two (2) notices of default as to each Noticing Creditor during the term of this Plan from any creditor. Upon a third default to that Noticing Creditor, the automatic stay as to that Noticing Creditor shall be automatically terminated without further notice or order from the Court, the Injunctions contained herein shall cease to apply to the Noticing Creditor, and the Noticing Creditor shall be entitled to pursue state-law remedies against the Reorganized Debtor and any Related Person, including Insiders and principals.

**K. <u>No Admissions or Waiver</u>.**

Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission or waiver by the Debtor with respect to any matter set forth herein, including liability on any Claim or the propriety of a Claim's classification.

DATED: July 24, 2024

SAUL EWING LLP

By: */s/ Zev Shechtman*
ZEV SHECHTMAN
General Bankruptcy Counsel for Heycart Inc,
Debtor and Debtor-in-Possession

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Saul Ewing LLP, 1201 North Market Street, Suite 2300, Wilmington, DE 19801.

A true and correct copy of the document entitled: **DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 24, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Andrew K Alper on behalf of Creditor 8fig Inc.
aalper@frandzel.com, rsantamaria@frandzel.com

Carol Chow on behalf of Debtor Heycart Inc
Carol.Chow@saul.com, easter.santamaria@saul.com

Carol Chow on behalf of Plaintiff Heycart, Inc.
Carol.Chow@saul.com, easter.santamaria@saul.com

Michael G D'Alba on behalf of Debtor Heycart Inc
mgd@lnbyg.com

David B Golubchik on behalf of Interested Party Courtesy NEF
dbg@lnbyg.com, dbg@lnbyg.com

David R Haberbush on behalf of Interested Party Courtesy NEF
dhaberbush@lbinsolvency.com,
ahaberbush@lbinsolvency.com,abostic@lbinsolvency.com,vhaberbush@lbinsolvency.com,haberbush.assistant@gmail.com,jborin@lbinsolvency.com,lbogard@lbinsolvency.com

Alan Craig Hochheiser on behalf of Creditor SellersFunding Corp
ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com

Eric P Israel on behalf of Debtor Heycart Inc
eisrael@danninggill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

John E Johnson on behalf of Creditor 8fig Inc.
jjohnson@padfieldstout.com

Jeffrey S Kwong on behalf of Creditor Committee The Official Committee of Unsecured Creditors
jsk@lnbyg.com, jsk@ecf.inforuptcy.com

Anne C Manalili on behalf of Interested Party Courtesy NEF
anne.manalili@sba.gov

Queenie K Ng on behalf of U.S. Trustee United States Trustee (SA)
queenie.k.ng@usdoj.gov

Brandy A Sargent on behalf of Creditor Amazon Capital Services, Inc.
brandy.sargent@klgates.com, litigation.docketing@klgates.com;janna.leasy@klgates.com

Brandy A Sargent on behalf of Creditor Amazon.com Services LLC
brandy.sargent@klgates.com, litigation.docketing@klgates.com;janna.leasy@klgates.com

Zev Shechtman on behalf of Debtor Heycart Inc
Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com

Zev Shechtman on behalf of Plaintiff Heycart, Inc.
Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com

Laura A Stoll on behalf of Creditor CFT Clear Finance Technology Corp.
lstoll@goodwinlaw.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL:**

On **July 24, 2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Queenie K Ng
411 West Fourth St.
Suite 7160
Santa Ana, CA 92701

U.S. TRUSTEE

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 24, 2024**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**BY PERSONAL DELIVERY**

Hon. Theodor C. Albert
U.S. Bankruptcy Court-Ronald Reagan Federal Building
411 W. Fourth Street, **Bin for judge by 5th floor elevators**
Santa Ana, CA 92701

☐ Service information continued on attached page

SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
(310) 255-6100

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 24 2024 | Cassandra Joyner | |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100